# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 19-1876V
UNPUBLISHED

| | |
|---|---|
| LISA MEIRNDORF,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: March 7, 2022<br><br>Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*John Robert Howie*, Howie Law, PC, Dallas, TX, for Petitioner.

*Voris Edward Johnson*, U.S. Department of Justice, Washington, DC, for Respondent.

**DECISION AWARDING DAMAGES**[1]

On December 11, 2019, Lisa Meirndorf filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a Table Injury – a Shoulder Injury Related to Vaccine Administration ("SIRVA") – as a result of an influenza ("flu") vaccine received on October 30, 2017. Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). Although Respondent conceded entitlement, the parties could not agree on damages, so the disputed issues were submitted to an SPU Motions Day hearing in February 2022.

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, I find that Petitioner is entitled to **$200,000.00**, for her actual pain and suffering, plus **$15,938.25** representing Petitioner's unreimbursed expenses.

## I. Procedural Overview

As noted above, the case was initiated in December 2019. On April 28, 2021, Respondent filed a Rule 4(c) Report in which he conceded that Petitioner was entitled to compensation in this case. ECF No. 33. Accordingly, on April 30, 2021, a ruling on entitlement issued finding Petitioner entitled to compensation for her SIRVA injury. ECF No. 35.

The parties were subsequently unable to informally resolve the issue of damages, so a briefing schedule was set on September 10, 2021. ECF No. 43. Petitioner filed her brief on October 25, 2021, requesting that I award her $200,000.00 in compensation - representing her past/actual pain and suffering. ECF No. 45. Conversely, in a brief filed on December 9, 2021, Respondent argued that Petitioner should be awarded only $175,000.00 for past pain and suffering. ECF No. 46. Petitioner filed a Reply brief on December 21, 2021. ECF No. 47. The parties have otherwise agreed upon an award of $15,938.25 representing Petitioner's unreimbursed expenses, so that amount is not disputed and will be awarded as well. ECF No. 46 at 1.

In January of this year, I informed the parties that this case was appropriate for an expedited hearing and ruling via my "Motions Day" practice, at which time I would decide the disputed damages issues based on all evidence filed to date plus whatever oral argument they wanted to make. ECF No. 48. The parties agreed, and the hearing took place on February 18, 2022. Minute Entry dated February 24, 2022.[3] I orally ruled on Petitioner's damages at that time, and this Decision memorializes my determination.

## II. Pain and Suffering

### A. Legal Standard and Prior SIRVA Pain and Suffering Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Winkle v. Sec'y Health & Hum. Servs.*, No. 20-0485V, 2022 WL 221643, at *2-4 (Fed. Cl. Spec. Mstr. Jan. 11, 2022).

---

[3] John Howie appeared on behalf of Petitioner, and Jeremy Fugate appeared on behalf of Respondent. The transcript of the February 18, 2022 Hearing in this case was not filed as of the date of this Decision, but my oral ruling is incorporated by reference herein.

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[4]

### B. Appropriate Compensation for Petitioner's Pain and Suffering

In this case, Ms. Meirndorf's awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, affidavits, filings, and all assertions made by the parties in written documents and at the expedited hearing held on February 18, 2022. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

I find that $200,000.00 represents a fair and appropriate amount of compensation for Petitioner's past pain and suffering. There are several related bases for my decision.

First, the record establishes that Petitioner's shoulder pain was initially fairly severe, prompting her to contact her primary care provider nine days after her vaccination on November 8, 2017, and then again on November 9, 2017. Ex. 3 at 14. Petitioner was seen by her primary care provider on November 10, 2017. Ex. 3 at 91-95. Petitioner reported right shoulder pain that was "constant[]," "worsening," and "interfering with her ability to work (on the computer) as well as drive due to discomfort." Ex. 3 at 91. It was noted that Petitioner had decreased range of motion ("ROM"), and she was recommended to begin physical therapy as soon as possible. *Id.* Petitioner was assessed with an "[a]dverse effect of vaccine" and "[a]cute pain of right shoulder." *Id.* Thereafter, she underwent a significant amount of treatment for her injury for over three years, to

---

[4] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

include: 79 physical therapy sessions[5], three steroid injections[6], five laser treatments[7], two joint injections[8], two shoulder MRI scans[9], and two separate arthroscopic surgeries.[10]

Second, Petitioner's medical records establish that the course of her injury, and level of treatment it required, was far more severe than usual. Petitioner's reported pain levels varied, but were relatively high leading up to her first surgical procedure, further her pain was persistent enough to cause her to seek out, and receive, a significant amount of medical treatment as described above. On March 1, 2019, Petitioner underwent her first arthroscopic surgery under general anesthesia and a scalene block, consisting of 1) a right shoulder arthroscopic subacromial decompression; 2) a right shoulder arthroscopic distal clavicle excision; and 3) a right shoulder arthroscopic extensive joint debridement. Ex. 14 at 3. Her post-operative diagnoses were right shoulder impingement, AC joint arthritis, and subacromial bursitis. *Id.*

The surgical procedure did not, however, relieve Petitioner's shoulder pain, and she continued to seek out medical intervention as a result. But despite undergoing extensive additional treatment, including 36 physical therapy appointments (Ex. 16 at 82-162), and seven acupuncture treatments (Ex. 24 at 13-25) – all subsequent to her March 1, 2019 surgery – Petitioner's shoulder injury persisted. On November 13, 2020, Petitioner underwent a second arthroscopic surgery under general anesthesia and a scalene block – consisting of 1) a right shoulder revision arthroscopic subacromial

---

[5] Petitioner underwent multiple rounds of physical therapy for a total of 79 physical therapy sessions. *See, e.g.*, Exs. 7, 16, 29. *See also*, Petitioner's Brief, Ex. B (ECF No. 45-2).

[6] Petitioner received steroid injections on December 22, 2017 (Ex. 11 at 5), March 1, 2018 (Ex. 11 at 19), and June 21, 2019 (Ex. 17 at 13).

[7] Petitioner received two laser treatments in January 2018 (Ex. 11 at 13, 15) and three laser treatments in November 2020 (Ex. 26 at 2-4).

[8] Petitioner received arthrocentesis/joint injections on October 2, 2018, and November 2, 2018. Ex. 9 at 6-8. These injections consisted of normal saline and xylocaine. *Id.* Petitioner describes these injections as "prolotherapy." S*ee, e.g.*, ECF No. 47 at 5.

[9] Petitioner underwent a right shoulder MRI on December 20, 2017, with the following "Impression: 1. Mild infraspinatus tendinosis. Mild overlaying bursitis in the subacromial subdeltoid bursa." Ex. 6 at 144. On October 13, 2020, Petitioner underwent an MR Arthorgram with the following impression: "1. Trace subacromial/subdeltoid bursitis. 2. No rotator cuff tear or tendon retraction. 3. No glenoid labral tear or para labral cyst. 4. Perhaps subtle prominence/widening of the acromioclavicular joint. … [which] could reflect a sequela of interval surgery." Ex. 27 at 18-19.  Additionally, I note that Petitioner underwent an MRI of the cervical spine on February 13, 2020. Ex. 20 at 1-2.

[10] Petitioner underwent her first arthroscopic surgery on March 1, 2019, and her second on November 13, 2020. Ex. 14 at 3-4, Ex. 25 at 83-84.

decompression; and 2) an arthroscopic extensive joint debridement. Ex. 25 at 83. Her post-operative diagnoses included: right shoulder impingement, rotator cuff inflammation, subacromial bursitis and adhesions. *Id.* After the second surgical intervention on Petitioner's right shoulder, Petitioner engaged in an additional 17 physical therapy sessions. *See, e.g.*, Ex. 29.

Petitioner's final treatment session was her discharge from physical therapy on January 28, 2021. At that time her condition had significantly improved, and she stated her "greatest deficit" was "decreased functional strength as week as a 2/10 soreness during maximal OH movement patters." Ex. 29 at 111.

All of the above records factor into my determination. But I have also fully considered the sworn statement of Petitioner – a 36-year-old mother of two at the time of her vaccination – which details the limitations she experienced in her overall enjoyment of life, physical activities, work duties, and exercise of daily functions attributable to her injuries. Ex. 31. Petitioner establishes that her injury had a severe effect on her mental state, and she became depressed, hopeless, and angry. Ex. 31 ¶ 9. Petitioner's depression is corroborated in the medical record, as she was diagnosed by one of her treaters with an "[a]djustment disorder with depressed mood due to chronic pain." Ex. 13 at 7. Additionally, Petitioner was unable to engage and be active with her young children. Ex. 31 ¶¶11-12.  Petitioner maintains she continues to live in daily pain and is unsure if she will ever return to her pre-injury condition. *Id.* at ¶13.

Based upon all of the above, I find that Petitioner has demonstrated entitlement to a substantial award for pain and suffering award, and one higher than what has been recommended by Respondent.

Respondent cites two comparable cases - *Pruitt v. Sec'y of Health & Hum. Servs.,* No. 17-0757V, 2021 WL 5292022 (Fed. Cl. Spec. Mstr. Oct. 29, 2021)(awarding $185,000 for the petitioner's past pain and suffering), and *McDorman v. Sec'y of Health & Hum. Servs.,* No. 19-0814V, 2021 WL 5504698 (Fed. Cl. Spec. Mstr. Oct. 18, 2021) (awarding $200,000 for the petitioner's past pain and suffering) – but argues they represent injuries that were more severe than Petitioner's injury, so Petitioner should be awarded only $175,000.00 for pain and suffering.

Petitioner, by contrast, argues that her case is comparable to two other SIRVA decisions[11] involving also involving two surgical procedures, *M.W v. Sec'y of Health & Hum. Servs.,* No. 18-0267V, 2021 WL 3618177 (Fed. Cl. Spec. Mstr. Mar. 17, 2021)

---

[11] At the February 18, 2022 Motions Day hearing, Petitioner's counsel offered additional comparables, but I find of the cases offered by Petitioner those discussed above represent the best comparables.

(awarding $195,000 for the petitioner's past pain and suffering); *Schoonover v. Sec'y of Health & Hum. Servs*, No. 16-1324V, 2020 WL 5351341 (Fed. Cl. Spec. Mstr. Aug. 5, 2020) (awarding $200,000 for the petitioner's past pain and suffering).[12] Petitioner thus contends her demanded pain and suffering amount is precisely in line with these prior determinations.

Each of the four cases cited above represent reasonable comparables (despite some individual distinctions) involving petitioners who suffered extensive SIRVA injuries requiring two surgical interventions. I find, however, that the *Pruitt* petitioner underwent significantly less treatment than Ms. Meirndorf (in particular the *Pruitt* petitioner engaged in only 14 physical therapy sessions (2021 WL 5292022, at *8) while Ms. Meirndorf completed 79 sessions as discussed above). I also determine that overall, Petitioner's proposed comparables are somewhat more useful. And I credit that Petitioner's demand is consistent with those cases (whereas other Program petitioners often seek a higher award, arguing that their suffering in uniquely distinguishable – an exceedingly rare occurrence). I therefore adopt Petitioner's proposed sum over Respondent's.

### III.   Conclusion

Based on my consideration of the complete record as a whole and for the reasons discussed in my oral ruling, I find that $200,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.

Accordingly, I award Petitioner a lump sum payment of $215,938.25 (representing an award of $200,000.00 for actual pain and suffering and $15,938.25 for Petitioner's unreimbursed expenses) in the form of a check payable to Petitioner. This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with this decision.

**IT IS SO ORDERED.**

                                      <u>s/Brian H. Corcoran</u>
                                      Brian H. Corcoran
                                      Chief Special Master

---

[12] Respondent during oral argument attempted to distinguish the *Schoonover* award for actual pain and suffering since that petitioner suffered a permanent injury, however I note that the *Schoonover* petitioner was awarded a future award of pain and suffering in consideration of her permanent partial disability.